Scott Bennett NAVA, individually and as the duly appointed administrator of the estate of Randolph Bennett, Plaintiff–Appellee,

v.

CITY OF DUBLIN, Defendant,

and

California Highway Patrol; Maurice Hannigan, Commissioner; James A. Williams, individually and in his official capacity as a California Highway Patrol Officer; Craig Howard Whitty, individually and in his official capacity as a California Highway Patrol Officer, Defendants–Appellants.

No. 95–16209.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 4, 1996.

Decided July 28, 1997.

Tyler B. Pon, Supervising Deputy Attorney General of the State of California, Wilfred T. Fong, Deputy Attorney General, San Francisco, CA, for Defendants–Appellants.

Dennis P. Reardon, San Francisco, CA, Andrew C. Schwartz, Rachel K. Bernstein, Brian T. Moore, Casper, Meadows & Schwartz, Walnut Creek, CA, for Plaintiff–Appellee.

Before: SKOPIL and FLETCHER, Circuit Judges, and RHOADES,* District Judge.

Opinion by Judge SKOPIL; Concurrence by Judge FLETCHER.

SKOPIL, Circuit Judge:

We examine in this appeal the propriety of the district court's entry of a permanent injunction preventing the California Highway Patrol ("CHP") from authorizing its officers to apply the carotid hold, a type of chokehold used to subdue resisting suspects, unless application of the chokehold is necessary to prevent death or serious bodily harm to an officer or third party.

**Facts and Prior Proceedings**

On April 15, 1992, Randolph Bennett was stopped by CHP officer James Williams for illegally walking on the shoulder of Highway 580 in Pleasanton, California. As Officer Williams attempted to remove Bennett from the shoulder of the road, a struggle ensued and Williams alerted his dispatcher that he needed assistance. CHP officer Craig Whitty arrived on the scene a few moments later and joined the struggle. To subdue Bennett, Whitty endeavored to apply a carotid hold.

After the hold had been applied for several seconds, Bennett lost consciousness. When paramedics arrived, Bennett did not respond to emergency treatment, and he was later pronounced dead at the San Ramon Medical Center.

On April 13, 1993, Bennett's son, Scott Bennett Nava, individually and as the administrator of his father's estate, filed this action in federal district court seeking damages and an injunction pursuant to 42 U.S.C. § 1983. The defendants relevant to this appeal are the CHP, its commissioner Maurice Hannigan, and CHP officers Whitty and Williams (collectively herein "CHP"). The case was tried to a jury, which returned a verdict finding the following constitutional violations: that Officer Whitty deprived Bennett of his constitutional rights by using excessive force; that Commissioner Hannigan promulgated a policy which was followed and which caused Bennett to be deprived of his constitutional right to be free from the use of excessive force; that Hannigan failed to train CHP officers adequately, causing Bennett to be deprived of his constitutional right to be free from the use of excessive force; and that Officers Whitty and Williams deprived Bennett of his constitutional rights by being deliberately indifferent to his medical needs. The jury awarded Nava $470,000 in compensatory and punitive damages.

After the jury reached its verdict, the district court considered whether an injunction should issue. The court found that there was substantial evidence at trial that the carotid hold is deadly, and that the CHP's policy is to use the carotid hold when deadly force is not justified. Accordingly, "in light of the jury verdict," the court entered a permanent injunction: (1) ordering the CHP and Commissioner Hannigan "to formulate a policy on excessive force which includes clear instructions that the carotid hold may not be used unless the application of such force is necessary to prevent death or serious bodily harm to an officer or third party"; (2) forbidding CHP officers from using the carotid hold "except when the application of such force is

---

* The Honorable John S. Rhoades, Senior United States District Judge for the Southern District of California, sitting by designation.

necessary to prevent death or serious bodily harm to an officer or third party"; and (3) ordering the CHP to submit to the court for review a final draft of the policy required by the injunction, as well as a plan for immediate implementation of adequate training on use of the carotid hold, "which shall [a] train officers in compliance with the new policy, [b] train officers how to use the carotid hold effectively and safely on struggling persons, [c] train officers when to release the hold if it does not result in unconsciousness and [d] train officers on medical procedures to be followed after applying the hold, including avoiding positional asphyxia and administering cardiopulmonary resuscitation."

The defendants timely appealed the district court's entry of the permanent injunction.

### Mootness of the Appeal

■ As a threshold matter, we must decide whether we have jurisdiction to entertain the CHP's appeal. After the jury returned a verdict in Nava's favor and the district court entered the permanent injunction, the parties stipulated to vacate the jury's verdict, the judgment and the injunction. The parties also entered into a Stipulated Compromise and Settlement Agreement in which Nava agreed to dismiss any and all claims, including his claim for injunctive relief. The district court, however, refused to vacate the injunction. The CHP nevertheless agreed to abide by the settlement terms so long as its right to appeal the permanent injunction was preserved. The district court acknowledged on the record that the CHP had not waived its right to appeal the injunction by entering into the settlement agreement.

Nava now contends, however, that the settlement agreement mooted the CHP's appeal of the injunction. Nava asserts that, because his standing to seek injunctive relief was predicated on his claim for damages and the stipulated compromise settled the damages claim, there is no longer a live case or controversy for us to adjudicate.

We have held that a plaintiff's appeal from the entry of a declaratory judgment is rendered moot by settlement of the accompanying damages claims where the plaintiff's standing to seek declaratory relief was predicated on the existence of those claims for damages. *Blair v. Shanahan*, 38 F.3d 1514, 1518–20 (9th Cir.1994), *cert. denied*, 514 U.S. 1066, 115 S.Ct. 1698, 131 L.Ed.2d 561 (1995). We reasoned that since the damages claims no longer existed, they could not "presently confer a personal stake in the declaratory judgment." *Id.* at 1520. Nava posits that *Blair* precludes us from entertaining the CHP's appeal. We disagree. Here, an injunction rather than a declaratory judgment is at stake. The existence of the injunction, which calls for continuing supervision of the CHP by the district court, presents a live and immediate controversy for which relief can be granted. *See Cammermeyer v. Perry*, 97 F.3d 1235, 1238–39 (9th Cir.1996) (existence of injunction, unlike a declaratory judgment, presents a live case or controversy on appeal because "[t]he injunction must be obeyed until it is stayed, dissolved, or reversed, even if it is erroneously issued.") (quoting 1 Dan B. Dobbs, *Law of Remedies: Damages–Equity–Restitution* § 2.9(1), at 223 (2d ed.1993)). Accordingly, we conclude that the CHP's appeal from the district court's entry of the permanent injunction is not moot.

### Standing to Seek the Injunction

■ The CHP asserts that the district court lacked jurisdiction to issue the injunction because Nava failed to establish that he was likely to suffer future injury from the CHP's use of the chokehold. The CHP relies on *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), a case remarkably similar to the one we now decide. There, plaintiff Lyons was stopped by officers of the Los Angeles Police Department ("LAPD") for a traffic infraction. Lyons alleged that, without provocation or justification, the officers seized him and applied a chokehold which rendered him unconscious and caused him injury. Lyons filed a complaint in federal district court seeking damages, declaratory relief, and an injunction barring LAPD officers from using chokeholds "except in situations where the proposed victim of said [chokehold] reason-

ably appears to be threatening the immediate use of deadly force." 461 U.S. at 98, 103 S.Ct. at 1663. The district court entered a preliminary injunction enjoining the use of chokeholds "under circumstances which do not threaten death or serious bodily injury," *id.* at 100, 103 S.Ct. at 1664, and we affirmed. *Id.*

The Supreme Court reversed, concluding that Lyons had failed to demonstrate a case or controversy that would justify the equitable relief sought. Applying the established rule that " '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief,' " *id.* at 102, 103 S.Ct. at 1665 (quoting *O'Shea v. Littleton,* 414 U.S. 488, 495, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974)), the Court in *Lyons* reasoned:

> Lyons' standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers.... That Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part.

*Id.* at 105, 103 S.Ct. at 1667. If we were writing on a slate free of intervening Ninth Circuit decisions, our analysis of Nava's standing would end here. Under *Lyons,* Nava clearly lacks standing to seek injunctive relief and the district court erred in concluding otherwise. As Nava correctly points out, however, the slate is not clean.

After *Lyons,* we fashioned an exception to the general rule that a plaintiff must demonstrate a likelihood of future injury in order to seek forward-looking relief. The seed for the exception first sprouted just months after *Lyons* was decided. In *Gonzales v. City of Peoria,* 722 F.2d 468 (9th Cir.1983), individuals of Mexican descent alleged that they had been unlawfully stopped, questioned and detained by city police without reasonable sus-

picion or probable cause and solely on the basis of their race and appearance. We held that they had standing to pursue damages, injunctive and declaratory relief. This case was different than *Lyons,* we concluded, because here the plaintiffs had demonstrated a sufficient future threat of constitutional violations. We went on to note, however, that this case was also different from *Lyons* because "there is no indication here that the plaintiffs' damage claims are severable from their demands for equitable relief." *Gonzales,* 722 F.2d at 481 (relying on *Lyons,* 461 U.S. at 105 n. 6, 103 S.Ct. at 1667 n. 6 (noting that "respondent's damages claim could be severed from his effort to obtain equitable relief")).

In *Giles v. Ackerman,* 746 F.2d 614, 619 (9th Cir.1984) (per curiam), we subsequently construed *Gonzales* as supporting a much broader proposition. There, the plaintiff was arrested for a minor traffic offense and was subjected to an illegal strip search at the county jail. She filed a complaint seeking damages, injunctive and declaratory relief. Relying on *Gonzales,* we concluded that the plaintiff had standing to request injunctive and declaratory relief simply by virtue of her standing to bring her damages action. *Giles,* 746 F.2d at 619. After *Giles,* in other words, plaintiffs in this circuit were relieved of the obligation to allege a credible threat of future injury in order to seek forward-looking relief so long as they also brought a claim for damages in the same action. Cognizant of the breadth of this rule, we subsequently limited the exception created in *Giles* to situations in which the claims for damages and equitable relief "involve the same operative facts and legal theory." *Smith v. City of Fontana,* 818 F.2d 1411, 1423 (9th Cir.1987).

■ Accordingly, the law of this circuit is that once a plaintiff establishes standing to seek damages, a court need not undertake a separate standing inquiry for equitable relief so long as the damages and equitable claims are predicated on the same operative facts and legal theories. We are obligated to follow this rule, *see In re Osborne,* 76 F.3d 306, 309 (9th Cir.1996), but we do so with reservation. The *Gonzales /Giles /Smith* line of cases relieves plaintiffs of the burden of es-

tablishing what has consistently been deemed by the Supreme Court to be one of the "irreducible constitutional minima" of standing to seek prospective relief—a likelihood that the plaintiff will suffer future harm from the challenged conduct. *See Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 209–11, 115 S.Ct. 2097, 2104, 132 L.Ed.2d 158 (1995); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).

Indeed, we are the only circuit to recognize this exception to *Lyons.* By contrast, other courts have expressly interpreted *Lyons* as requiring separate justiciability inquiries for damages and prospective relief. *See, e.g., Coleman v. Watt,* 40 F.3d 255, 259 (8th Cir. 1994) (analyzing justiciability separately for damages and injunctive relief); *Church v. City of Huntsville,* 30 F.3d 1332, 1335, 1337 (11th Cir.1994) (although claim for damages and injunctive relief brought in same action, "[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges . . . a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury"); *Wagshal v. Foster,* 28 F.3d 1249, 1252 (D.C.Cir.1994) (analyzing justiciability separately for damages and injunctive relief), *cert. denied,* 514 U.S. 1004, 115 S.Ct. 1314, 131 L.Ed.2d 196 (1995); *Henschen v. City of Houston,* 959 F.2d 584, 587 (5th Cir.1992) ("Justiciability must be analyzed separately on the issues of money damages and the propriety of equitable relief."); *Williams v. Ellington,* 936 F.2d 881, 889 (6th Cir.1991) (analyzing justiciability separately for damages and injunctive relief); *Facio v. Jones,* 929 F.2d 541, 544 (10th Cir.1991) ("[S]tanding to obtain injunctive and declaratory relief must be analyzed separately from standing to obtain retrospective relief.") (quoting M. Schwartz & J. Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees* § 2.5, at 29 (1986)); *National Maritime Union of Am. v. Commander, Military Sealift Command,* 824 F.2d 1228, 1234 (D.C.Cir.1987) ("[T]he relief the litigant seeks is crucial to the determination of his standing; he may possess standing as to one form of relief [damages] but not as to another [injunctive].");* Tucker v. Phyfer,* 819 F.2d 1030, 1034 (11th Cir.1987)

("*Lyons* stands for the proposition that a plaintiff who has standing to bring a damages claim does not automatically have standing to litigate a claim for injunctive relief arising out of the same set of operative facts."); *Brown v. Edwards,* 721 F.2d 1442, 1446–47 (5th Cir.1984) (considering jurisdiction separately for damages and injunctive relief). Moreover, the Seventh Circuit has expressly criticized our interpretation of *Lyons. See Robinson v. City of Chicago,* 868 F.2d 959, 967 (7th Cir.1989). In *Robinson,* the court wrote:

The Ninth Circuit has adopted a rule that where a plaintiff's claims for damages and declaratory relief are predicated on a single legal theory requiring development of the same facts, and a live controversy exists between the plaintiff and defendant for a damages claim, then federal jurisdiction exists over the declaratory relief claim as well. In *Smith,* the Ninth Circuit distinguished *Lyons* on the grounds that there the district court had severed the damages claim from the injunctive claim, so that the Supreme Court was considering the injunctive claim alone. . . .

We read *Lyons* differently. In *Lyons,* the Court carefully distinguished between the floating damages claim, for which standing existed, and the injunctive claim, for which it did not. The D.C. Circuit correctly summarized *Lyons* when it read *Lyons* as holding that "although damage standing available, injunctive standing not."

*Id.* (citations omitted).

Indeed, it appears that several of our own decisions have impliedly declined to apply the *Gonzales/Giles/Smith* exception, even when the facts and procedural posture of those cases would have otherwise called for it. *See, e.g., O'Neal v. City of Seattle,* 66 F.3d 1064, 1066 (9th Cir.1995) (although claims for damages and injunctive relief brought in same action, existence of damages claim did not confer standing to seek injunction); *Thomas v. County of Los Angeles,* 978 F.2d 504, 507–08, 511 (9th Cir.1993) (although claims for damages and injunctive relief brought in same action, standing to seek injunctive relief existed because plaintiff al-

leged a real and immediate threat of future injury, not because of accompanying damages claim); *Imagineering, Inc. v. Kiewit Pacific Co.*, 976 F.2d 1303, 1306–09 (9th Cir. 1992) (although plaintiff sought both damages and injunctive relief in same action, standing existed only for damages claim and not for injunctive relief because plaintiff did not show a "very significant possibility" of future harm); *Nelsen v. King County*, 895 F.2d 1248, 1249–55 (9th Cir.1990) (although plaintiffs sought both damages and injunctive relief in same action, they lacked standing to seek injunctive relief because they did not demonstrate that there was a credible threat that they would again be injured by the challenged conduct); *The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 528–29 (9th Cir.1989) (treating standing to seek damages and standing to seek injunctive relief as separate inquiries); *see also Olagues v. Russoniello*, 797 F.2d 1511, 1525–26 (9th Cir.1986) (en banc) (Wallace, C.J., dissenting) ("I agree that alleged past injury gives Olagues ... standing *to seek damages*. The majority errs by somehow extending this standing to seek relief for past injury into standing to seek relief for prospective injury. It is quite clear that standing to seek damages is insufficient to afford standing for prospective relief.") (citing *Lyons* ) (emphasis in original), *vacated*, 484 U.S. 806, 108 S.Ct. 52, 98 L.Ed.2d 17 (1987).

Notwithstanding this authority to the contrary, however, a faithful interpretation of the *Gonzales /Giles /Smith* line of cases requires that we apply the exception created by those cases here. The CHP does not, and could not successfully, argue that Nava lacked standing to seek damages, or that Nava's claims for damages and injunctive relief do not involve the same operative facts and legal theory. Thus, Nava had standing to seek injunctive relief. We emphasize, however, that without the exception created in *Gonzales /Giles /Smith*, we would have little difficulty concluding that Nava lacked standing to seek prospective relief. Nava failed to make an *"individualized* showing that there is a *very significant possibility* that the future harm will ensue." *Lee v. Oregon*, 107 F.3d 1382, 1388–89 (9th Cir. 1997) (second emphasis added; internal quo-

tations and citations omitted), *petition for cert. filed*, 65 U.S.L.W. 3783 (U.S. May 16, 1997) (No. 96–1824). Moreover, "[j]ust because the asserted injury is the threat of death does not mean that the plaintiff is relieved from the requirement of asserting some significant possibility of injury." *Id.* at 1389–90.

## Merits of the Injunction

■ The CHP contends that, even assuming that Nava had standing to seek the injunction because of his accompanying damages claim, he was not entitled to obtain the injunction. We agree. Even in the face of ongoing unconstitutional conduct on the part of state law enforcement officers, an injunction may not be issued to halt that conduct absent a great and immediate threat that the named plaintiff will suffer irreparable injury for which there would be an inadequate remedy at law. *See Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1495–96 & n. 5, 1500 (9th Cir.1996). We conclude that Nava did not satisfy these requirements.

The district court entered the permanent injunction in this case "based upon the evidence presented at trial, and on the jury's verdict that Bennett had been killed in violation of his constitutional right to be free from excessive force and that the CHP policy regarding use of the carotid hold caused that violation." The court found that application of the carotid hold constitutes deadly force, and that the CHP's policy of permitting the carotid hold to be applied in circumstances calling for less than deadly force was sufficient to create a great and immediate threat of irreparable injury to Nava, his relatives and other citizens.

We need not second-guess the district court's underlying finding that application of the carotid hold constitutes deadly force to conclude that the court slighted the preconditions for equitable relief in entering the injunction in this case. For this conclusion, we need look no further than *Lyons*. There, the Supreme Court offered as an alternative ground for its decision the plaintiff's failure to make the showing of irreparable injury required for obtaining equitable relief. Ac-

knowledging that the elements which must be considered in determining whether a plaintiff has standing "obviously shade into those determining whether the complaint states a sound basis for equitable relief," *Lyons*, 461 U.S. at 103, 103 S.Ct. at 1666 (quoting *O'Shea*, 414 U.S. at 499, 94 S.Ct. at 677), the Court concluded that "[a]bsent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." *Id.* at 111, 103 S.Ct. at 1670. In so holding, the Court merely confirmed one of the fundamental precepts of the law of remedies: a plaintiff is entitled to forward-looking relief only if there is a great and immediate threat that without that relief the plaintiff will suffer an injury. Past injury may entitle the victim to relief in the form of damages, but it is simply insufficient to obtain an injunction.

Here, the district court determined that the existence of the CHP's carotid hold policy created a "realistic risk" that Nava, along with every other citizen of the great state of California, would be subjected to excessive force by CHP officers in the future. But a "realistic" threat to the public at large is not enough to warrant injunctive relief. The plaintiff must also demonstrate that he, himself, is immediately likely to suffer future injury. *Cf. Lyons*, 461 U.S. at 106 n. 7, 103 S.Ct. at 1667 n. 7. By acknowledging that Nava is no more likely to be subjected to excessive force than any other citizen of California, the district court effectively concedes that the threat of future harm to Nava does not rise to the requisite degree of immediacy.

Moreover, the district court assigns unwarranted legal significance to the existence of departmental policy. The Supreme Court recognized in *Lyons* that even if the LAPD maintained a clearly unconstitutional blanket policy of authorizing its officers to apply a chokehold to any citizen with whom they have an encounter, Lyons would also have to allege that he would *have* another encounter with police in order to establish a real and immediate threat of future injury. *Id.* at 105–06, 103 S.Ct. at 1666–67. In the present case, Nava did not allege that he was likely ever to come in contact with CHP officers, much less conduct himself in a manner that would elicit the use of force by those officers. Nor was there a scintilla of evidence adduced at trial to that effect. Indeed, throughout the course of this litigation, Nava has never contended that he, himself, is likely to suffer future harm from the challenged conduct of the CHP. We are therefore left to speculate about the likelihood of prospective harm to Nava. Accordingly, a fundamental prerequisite of equitable relief has not been fulfilled, and the district court's injunction was improperly issued.

In sum, we hold that Nava had standing to seek injunctive relief because of his related claim for damages, but that his allegations and the evidence adduced at trial were insufficient to entitle him to injunctive relief. Our conclusion on the merits of the injunction is entirely consistent with the Supreme Court's analysis in *Lyons*:

> Lyons fares no better if it be assumed that his pending damages suit affords him Art. III standing to seek an injunction as a remedy for the claim arising out of the October 1976 events. The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real and immediate threat that the plaintiff will be wronged again—a "likelihood of substantial and immediate irreparable injury."

461 U.S. at 111, 103 S.Ct. at 1670 (citation omitted).

The district court concluded that this passage from *Lyons* was dicta, and thus rejected the CHP's assertion that the injunction was erroneously issued. We have held, however, that the Court's discussion of the merits of the injunction in *Lyons* is not dicta, but rather one of "three discreet holdings" in the case. *LaDuke v. Nelson*, 762 F.2d 1318, 1323 (9th Cir.1985), *modified*, 796 F.2d 309 (9th Cir.1986). Accordingly, *Lyons* precludes the issuance of an injunction where, as here, a plaintiff's standing to seek the injunction is predicated on the existence of an accompany-

ing damages claim and there has been no individualized showing of likely future harm to the plaintiff.

We recognize, of course, that our holding considerably weakens the exception created in *Gonzales/Giles/Smith*. Although a plaintiff can *seek* an injunction on the basis of her standing to seek damages, there likely is no set of circumstances in which she would be able to *obtain* one. Yet our cases formulating and applying the *Gonzales/Giles/Smith* exception do not dictate a contrary result. In those cases it was unnecessary to decide whether the plaintiffs could satisfy the likelihood of irreparable injury requirement for injunctive relief because of the factual and procedural posture in which those cases came to us. None reached the pertinent question whether a plaintiff whose standing to seek injunctive relief is predicated solely on a concurrent damages claim can satisfy the likelihood of irreparable injury requirement to obtain injunctive relief.

### Conclusion

If we were unencumbered by controlling Supreme Court precedent, we might be inclined, as was the district court, to allow Nava access to the federal courts on the basis of his damages claim and to uphold the entry of the injunction in this case on the basis of the jury's finding that Nava's father was choked to death pursuant to CHP policy. We must, however, follow the law as it is construed by the Supreme Court. The district court did not do so in this case, and thus abused its discretion in entering the injunction. Accordingly, we reverse and remand to the district court to vacate the injunction.

**REVERSED** and **REMANDED.**

FLETCHER, Circuit Judge, specially concurring:

Because I read *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), to deprive Nava of standing to seek an injunction, I cannot join in the majority's opinion. I concur specially in the result only.

The majority acknowledges that unless we credit the rationales of *Gonzales v. City of*

*Peoria,* 722 F.2d 468 (9th Cir.1983), *Giles v. Ackerman,* 746 F.2d 614 (9th Cir.1984), and *Smith v. City of Fontana,* 818 F.2d 1411 (9th Cir.1987), under *Lyons,* Nava lacks standing to seek injunctive relief, since he has not demonstrated that he likely will suffer future harm from the CHP's misuse of the carotid hold. *See Lyons,* 461 U.S. at 105, 103 S.Ct. at 1666–67 (holding that plaintiff's standing to seek injunctive relief "depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers"). I cannot reconcile those cases with *Lyons.* We should take this case en banc to decide whether the exception to *Lyons* we have carved out in *Giles* and its progeny should remain the law of our circuit.