John DOE I, et al., Plaintiffs,

v.

UNOCAL CORP., et al., Defendants.

No. CV 96–6959 RAP (BQRx).

United States District Court,
C.D. California.

Aug. 5, 1999.

Paul Hoffman, Bostwick & Hoffman, Santa Monica, CA, Judith Brown Chomsky, Elkins Park, PA, Dan Stormer, Anne Richardson, Hadsell & Stormer, Pasadena, CA, Julie Shapiro, Tacoma, WA, Katharine J. Redford, Richard Herz, Earthrights International, Washington, DC, William H. Goodman, Jennifer M. Green, Beth Stephens, Center for Constitutional Rights, New York City, for plaintiffs.

Edwin V. Woodsome, Jr., D. Barclay Edmundson, Ann E. Grant, Howrey & Simon, Los Angeles, CA, Kristin Linsley Myles, Daniel P. Collins, Douglas A. Axel, Munger, Tolles & Olson, LLP, Los Angeles, CA, for defendants.

### ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

PAEZ, District Judge.

## I.

### Introduction and Factual Background

Pending before the Court is Plaintiffs' Revised Motion for Class Certification un-

der Rule 23(b)(2) of the Federal Rules of Civil Procedure. Doe plaintiffs bring this action against defendants Unocal Corporation ("Unocal"), Total S.A. ("Total"), the Myanmar Oil and Gas Enterprise ("MOGE"), the State Law and Order Restoration Council ("SLORC" or "SPDC")[1] and individual defendants John Imle, President of Unocal, and Roger C. Beach, Chairman and Chief Executive Officer of Unocal. Plaintiffs seek injunctive and declaratory relief and damages for international human rights violations allegedly perpetrated by defendants in furtherance of defendants Unocal, Total and MOGE's joint venture, the Yadana gas pipeline project.

The Court has previously described the factual allegations of plaintiffs' complaint and the relationship of the defendants in its two prior published opinions. *See Doe v. Unocal Corp.*, 963 F.Supp. 880 (C.D.Cal. 1997) and *Doe v. Unocal Corp.*, 27 F.Supp.2d 1174 (C.D.Cal.1998). The parties have submitted, and the Court has reviewed, voluminous evidence in support of and in opposition to plaintiffs' motions for class certification and preliminary injunctive relief. Rather than setting forth an exhaustive summary of that evidence, the Court presumes familiarity with the basic factual allegations of the case and discusses in the body of this order only those facts relevant to the Court's determination of the certification motion. Upon consideration of all written and oral argument, plaintiffs' motion is **DENIED** for the reasons set forth below.

## II.

### *Discussion*

### A. Class Definition

Plaintiffs initially sought certification of a class consisting of:

all residents of the Tenasserim region of Burma (bounded on the north by the town of Ye; on the south by the town of Tavoy; on the west by the coastline and offshore islands; and on the east by the Thai/Burmese border) who have been, are, or will be forced to relocate their place of residence, and/or contribute labor and/or property and/or subject to the death of family members, assault, rape or other torture, and other human rights violations in furtherance of the Yadana gas pipeline project in which defendants are joint venturers.

Complaint at ¶ 24. At the Court's request, plaintiffs submitted a revised proposed class definition, as follows:

The class consists of all residents of the Tenasserim region of Burma (bounded on the north by latitudinal line of 15 degrees 15 minutes North; on the south by the latitudinal line of 13 degrees, 30 minutes North; on the west by the coastline and offshore islands; and on the east by the Thai/Burmese border) who have been, are, or will be subject to the following acts in furtherance of the Yadana gas pipeline project in which defendants are joint venturers: forced relocation, forced labor, torture, violence against women, arbitrary arrest and detention, cruel, inhuman or degrading treatment, crimes against humanity, the death of family members, battery, false imprisonment, assault, negligent hiring, or negligent supervision.

Plaintiffs' Response to the February 27, 1998, Order of the Court with Regard to Class Certification at 1. Although the named plaintiffs assert various claims for damages on their own behalf, they seek to certify a class only to obtain declaratory and injunctive relief on behalf of the class pursuant to Rule 23(b)(2).

### B. Standing

■ Before addressing whether plaintiffs have satisfied the requirements for class certification under Rule 23, the Court must first determine whether plaintiffs

---

1. The State Law and Order Restoration Council has recently renamed itself the State Peace and Development Council.

have standing to seek injunctive relief as representatives of the proposed class.

> Standing is a jurisdictional element that must be satisfied prior to class certification. [ ] A litigant must be a member of the class he or she seeks to represent at the time the class action is certified by the district court. *Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).... If the litigant fails to establish standing, he may not seek relief on behalf of himself or any other member of the class.

*Nelsen v. King County,* 895 F.2d 1248, 1249–50 (9th Cir.1990) (internal quotations marks and citations largely omitted). In short, a litigant who lacks standing to sue cannot obtain standing by attempting to certify a class. *But see, Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 612, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (holding it is appropriate to reach Rule 23 requirements first if they are logically antecedent to Article III concerns); *Ortiz v. Fibreboard Corp.,* —— U.S. ——, ——, 119 S.Ct. 2295, 2307, 144 L.Ed.2d 715 (1999) (same). Here, the Court addresses Article III concerns first because the Rule 23 requirements are not logically antecedent to the standing question.

Standing questions arise as a result of constitutional and prudential limitations on the scope of federal jurisdiction. *Bennett v. Spear,* 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (citing *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). To satisfy the minimum constitutional requirements for standing under the Case or Controversy requirement of Article III:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *see also, United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.,* 517 U.S. 544, 551, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996). "The necessity that the plaintiff who seeks to invoke judicial power stands to profit in some personal interest remains an Art. III requirement." A federal court cannot ignore this requirement without overstepping its assigned role in our system of adjudicating only actual cases and controversies. *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 39, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

Where plaintiffs invoke federal jurisdiction, they must establish each element of standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130. Thus, while general factual allegations may suffice at the pleading stage, on summary judgment the plaintiff must present specific facts supporting each element of the standing inquiry. *Id.* Here, the allegations of the complaint, especially when read in conjunction with the evidence submitted by plaintiffs in support of their pending motion for class certification and their motion for a preliminary injunction, suffice to enable the Court to make reasoned judgments with respect to the disputed standing issues.

### 1. injury-in-fact

Defendants first assert that the named plaintiffs lack standing to seek injunctive relief on behalf of the proposed class because they are no longer subject to a credible threat of future injury based on defendants' alleged unlawful conduct. The named plaintiffs clearly have standing to assert their individual claims for damages. Defendants maintain, however, that because plaintiffs are now refugees in Thailand, they are no longer members of the

proposed class. Defendants advance this argument by interpreting the phrase "residents of the Tenasserim region" in the proposed class definition as excluding residents of the region who allegedly have been forced to flee the region because of alleged human rights violations.[2] Defendants' reading is not entirely unreasonable given the literal language of the proposed class definition. Nonetheless, if plaintiffs have standing to represent a class that includes both current residents of the region and former residents who are now refugees and if plaintiffs can satisfy the elements of Rule 23, the Court is empowered to modify the language of the class definition to resolve such ambiguities. Inclusion of language requiring residence in the Tenasserim region during the relevant time period, beginning in approximately 1990 or 1991 and continuing to the present, would cure the challenged defect in the class definition.

■ Nonetheless, to establish standing to seek injunctive relief,

> plaintiffs must demonstrate that a "credible threat" exists that they will again be subject to the specific injury for which they seek injunctive or declaratory relief. [ ] A reasonable showing of a "sufficient likelihood that the plaintiff will be injured again is necessary." [ ] The "mere physical or theoretical possibility" of a challenged action again affecting the plaintiff is not sufficient. [ ] There must be a "demonstrated probability" that the plaintiff will again be among those injured.... [W]e prefer to describe "probability" qualitatively, as requiring a very significant possibility, not quantitatively, as mandating a "greater than fifty percent" likelihood.... The question is whether the practices to which the plaintiffs object are capable of repetition as to them.

*Nelsen,* 895 F.2d 1248, 1250–51 (citations and internal quotation marks omitted).

Here, plaintiffs have met their burden of showing a credible threat, or demonstrated probability, that they will again be subjected to the allegedly ongoing human rights abuses in the Tenasserim region, which plaintiffs contend are being committed in furtherance of the pipeline project. *See Nelsen,* 895 F.2d at 1251 (burden of showing likelihood of recurrence is on the plaintiff). Plaintiffs allegations, as well as their submissions in support of their motion for a preliminary injunction, preliminarily show a continuing pattern of human rights abuses committed by SPDC soldiers in the Tenasserim region, allegedly in furtherance of a joint venture with defendants to build and maintain the Yadana pipeline. Recent reports from human rights organizations substantiate plaintiffs' claims of SLORC attacks on refugee camps at the Thai/Burmese border and of the Thai military's forced repatriation, or refoulement, of Burmese refugees living in Thailand. Human Rights Watch/Asia, *Burma/Thailand: No Safety in Burma, No Sanctuary in Thailand,* vol. 9, no. 6(c) at 13–19 (July 1997).

Defendants' attempt to equate the facts here with those in *Lujan* regarding the first prong of the standing inquiry is unpersuasive. In *Lujan,* the Supreme Court found that the threatened future harm to plaintiffs' interest in viewing endangered species in their natural habitat was not sufficiently imminent to establish plaintiffs' standing to seek injunctive relief. 504 U.S. at 563–64, 112 S.Ct. 2130. There, the named plaintiffs had merely expressed an intention to travel to Africa from the U.S. to see the endangered species again at some unspecified time in the future. *Id.*

■ By contrast, plaintiffs here assert that they are unable to return to their homeland because of the continuing human rights abuses in the Tenasserim region and that they are in danger of being forci-

---

**2.** To the extent the named plaintiffs' status as refugees distinguishes them from other members of the proposed class, the distinction is easily dissolved by clarifying the class defini-

tion to specify residence at specific times relevant to defendants' alleged violations of human rights laws.

bly repatriated to the Tenasserim region, either as a result of SPDC attacks on the refugee camps or by Thai refoulement actions. Because plaintiffs face a substantial probability of forced repatriation, and because plaintiffs' allegations and evidence suggest that human rights abuses are ongoing in the Tenasserim region, plaintiffs have demonstrated the existence of a credible threat that they will once again be subjected to human rights violations allegedly committed in furtherance of the pipeline project.

Plaintiffs correctly point out that they also meet the first prong of the standing inquiry because they are currently suffering continuing, adverse effects of the alleged pattern of human rights violations in the Tenasserim region in furtherance of the Yadana project. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Nelsen*, 895 F.2d at 1251 (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)). Because plaintiffs are living as refugees as a result of the alleged pattern of abuses in the Tenasserim region, they have satisfied the first element of standing.

### 2. causation

Defendants also challenge plaintiffs' standing on grounds that the injuries alleged are not fairly traceable to defendants' actions. Taking plaintiffs allegations as true, and augmenting those allegations with evidence submitted in support of the instant motion and the earlier motion for injunctive relief, plaintiffs satisfy their burden to set forth allegations sufficient to indicate the existence of a case or controversy. In brief, plaintiffs allege that defendants are liable for SPDC's alleged commission of human rights abuses in furtherance of the Yadana project. Based on plaintiffs' allegation that defendants are engaged in a joint venture with SPDC to build the pipeline and related infrastructure, plaintiffs' claims are fairly traceable to actions for which defendants may be liable.

### 3. redressability

While plaintiffs have established the first two elements of the standing inquiry, plaintiffs fail to show that injunctive relief will likely redress their injuries. Plaintiffs argue however, as a matter of law, that the Court may not inquire as to whether an injunction will redress plaintiffs' injuries. Relying on the reasoning in *Nava v. City of Dublin*, 121 F.3d 453 (9th Cir.1997), plaintiffs contend that because they have standing to pursue their claims for damages, they automatically have standing to seek injunctive relief.

In *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), the Supreme Court held that a plaintiff lacked standing to pursue injunctive relief because he could not demonstrate a credible threat of future harm. In a series of cases following *Lyons*, the Ninth Circuit created a limited exception to this rule. *See Gonzales v. City of Peoria*, 722 F.2d 468 (9th Cir.1983); *Giles v. Ackerman*, 746 F.2d 614 (9th Cir.1984); *Smith v. City of Fontana*, 818 F.2d 1411 (9th Cir.1987). In short, if "a plaintiff establishes standing to seek damages, a court need not undertake a separate standing inquiry for equitable relief." *Nava*, 121 F.3d at 456 (noting its obligation to follow this rule but that "we do so with reservation"). *Smith*, however, limited the exception by holding that it only applies to a claim for equitable relief and a claim for damages that "involve the same operative facts and legal theory." 818 F.2d at 1423.

The Court concludes that the *Gonzales/Giles/Smith* exception does not apply to the instant matter. Here, plaintiffs do not question a specific practice such as in the *Gonzales/Giles/Smith* cases. Rather, plaintiffs charge defendants with committing numerous wrongs. In light of such claims, plaintiffs must make an additional showing that the alleged harms are sufficiently related to the pipeline project to

warrant class-wide relief. Moreover, plaintiffs must prove additional facts for their equitable claim that they would not have to establish for their damages claims. The Court, therefore, proceeds to examine whether plaintiffs' claims may be redressed by injunctive relief.[3]

Plaintiffs' complaint seeks "an order directing defendants to cease payments to [SPDC]," "an order directing defendants to cease their participation in the joint enterprise until the resulting human rights violations in the Tenassarim region cease," and "such other injunctive relief as this Court deems appropriate." *See* Second Amended Complaint, Prayer for Relief (d). In their supplemental briefing, plaintiffs also suggest that the Court might preclude Unocal from selling its shares to a corporation which does not waive any objections to this Court's exercise of personal jurisdiction or prohibit the transfer of Unocal's interest to any entity which does not agree to be bound by the terms of the Court's injunction.[4] The plaintiffs also suggest that Unocal might be ordered to disgorge its profits from the pipeline.

3. Defendants raise the novel argument that the *Gonzales/Giles/Smith* line of reasoning only applies to the first prong of the standing analysis—injury-in-fact. An examination of the language in *Smith* and *Nava* supports this contention. In *Smith,* the Ninth Circuit specifically expanded the holding in *Lyons* by clarifying that "plaintiffs need not allege a credible threat of future injury in order to maintain a claim for equitable relief as long as they also have a claim for damages." 818 F.2d 1411. Likewise in *Nava,* the Ninth Circuit stated that: "The *Gonzales/Giles/Smith* line of cases relieves plaintiffs of the burden of establishing what has consistently been deemed by the Supreme Court to be one of the 'irreducible constitutional minima' of standing to seek prospective relief—a likelihood that the plaintiff will suffer future harm from the challenged conduct." 121 F.3d at 456–57. Following this language literally, it would appear that the *Gonzales/Giles/Smith* line of reasoning only applies to the first prong of the standing requirement. Indeed, many of the cases raising the *Nava* exception relied on it to resolve a question about the credible threat of future harm. In the instant matter, however, redressability is at issue.

Unocal argues that enjoining defendants in this action will be fruitless and will not redress any injuries alleged because other oil companies, including Total, MOGE and PTTEP, will take Unocal's place in the alleged joint venture if they are enjoined from further participation. From the parties' recent submissions, it appears that construction of the pipeline is complete except for environmental restoration work. *See* Peters Decl. ¶ 3. The substantial initial capital investment has already been made. Thus, Unocal's on-going expenses primarily consist of routine maintenance costs. *See* Peters Decl. ¶ 3. A Unocal official estimates that operating expenses for the pipeline will be $ 600 million over the length of the Gas Sales Agreement with Thailand. Ohnimus Decl. ¶ 4. This breaks down to $ 50 million per year increasing at 2.5% per year. Ohnimus Decl. ¶ 4.b. These expenses mainly include wages and maintenance of the pipeline. Ohnimus Decl. ¶ 4.b. The $ 600 million figure includes capital expenditures such as adding compressors to the offshore wells to maintain the gas flow over the duration of the Gas Sales Agreement.

The *Doe* plaintiffs reject defendants' argument and maintain that the reasoning of the *Nava* exception should be extended to the other two prongs as well. That is, as any question relating to the threat of future harm is cured by plaintiff's past injury, any question regarding the redressability of equitable relief is cured by plaintiff's request for money damages. The Court need not resolve this dilemma because it concludes that the *Nava* exception does not apply here. Nevertheless, the Court notes that the facts of this matter and the procedural posture of this lawsuit highlight the tension in the *Nava* line of cases.

4. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), suggests this type of relief might not be possible. In *Lujan,* the plaintiffs asked the trial court to make its ruling binding on governmental agencies who were not parties to the lawsuit. The Supreme Court dismissed this contention by explaining that the agencies "were not parties to the suit, and there is no reason they should be obliged to honor an incidental legal determination the suit produced." 504 U.S. at 569, 112 S.Ct. 2130.

Plaintiffs contend, however, that circumstances have changed since the onset of the Yadana project in the early 1990s, making the project an unattractive investment.[5] Plaintiffs note recent problems in the Thai economy and the fact that Texaco and ARCO have chosen to withdraw from projects in Burma as evidence that their injuries are likely to be redressed by injunctive relief. Moreover, plaintiffs point out that the World Bank has declined to finance the Ratchaburi power plant. The Ratchaburi power plant is intended to be the main recipient for the gas generated from the pipeline. Plaintiffs infer from this that no other corporate or governmental entity would be willing to finance the project and that construction on the power plant has stopped. Plaintiffs also argue that recent U.S. sanctions against new investments in Burma may impact the likelihood that no other corporations will take over Unocal's position if Unocal is enjoined from participating in the project. Finally, plaintiffs contend that the Court must view plaintiffs' evidence in a light most favorable to them given the procedural posture of the motion. Plaintiffs maintain, therefore, that the evidence of an economic downturn, coupled with the absence of U.S. investment in Burma, clearly establishes redressability at least at this stage of the litigation.

The Court is unpersuaded by plaintiffs' attempt to raise a factual dispute regarding the likelihood of investment. Even taking all of plaintiffs' allegations as true, any relief afforded plaintiffs depends nevertheless on the independent actions of individuals or corporate entities who are not parties to this lawsuit. As plaintiffs correctly point out in their supplemental reply, in order to find standing the Court would necessarily have to "conclude that no other company will take Unocal's interest if Unocal is enjoined." The Court cannot make this speculative factual conclusion. Any determination of that nature would be highly speculative whether the Court decided it now, at the time of summary judgment, or at trial. Over 70 percent of the pipeline is owned by other independent parties beyond the reach of this Court. Plaintiffs mistakenly place all of their emphasis on whether the pipeline will be profitable now or in the near future. However, this still does not answer the question of whether Total and other members of the joint venture would cease operating the pipeline or would finance the rest of the project themselves. Unfortunately, whether the Thai economy is booming or failing, the operation of the pipeline

**5.** Plaintiffs submit numerous newspaper articles attempting to prove that investment in the gas industry is not profitable. Defendants object to the evidence on hearsay grounds. Setting aside the evidentiary objections, the articles do not support plaintiffs' argument. First, most of the articles discuss how numerous companies and countries are cutting back on capital investment and development projects, such as new exploration projects, building new pipelines or drilling new wells. As noted above, construction of the pipeline is complete. The capital expenditures have already been made. Currently, the pipeline is estimated to require $50 million a year in operating costs, including wages and pipeline maintenance. Defendant Unocal is responsible for roughly one quarter of the operating costs or $12.5 million a year. The articles are not helpful because they address significant capital expenditures rather than routine operating expenses. Moreover, most of the articles discuss the avoidance of new develop-ment projects and the energy industry's readjustment to the slowing Asian economies. The articles also discuss that, while the boom years will most likely not occur again, the energy industry expects the demand to increase as the Asian economies turn around. Analysts particularly focus on the upward turn expected to occur after 2002. Thus, plaintiffs ask this Court to conclude that it is likely no other company in the world, including the original members of the pipeline project, would be willing to takeover a $12.5 million a year risk. Even assuming facts most favorable to the plaintiffs, specifically that the market for natural gas has slowed and will remain weak, plaintiffs' evidence only shows that energy related companies are hesitant to undertake new investments that require a substantial capital investment. Plaintiffs' evidence does not address or illustrate that other energy companies would not be willing to takeover Unocal's share of the operating costs.

rests within the discretion of independent actors who are not parties to this lawsuit.

Several Supreme Court cases support this conclusion. For example, in *Lujan*, the Supreme Court concluded that the plaintiffs lacked standing because their alleged injuries were not redressable. 504 U.S. at 568–71, 112 S.Ct. 2130. There, the remedy for redressing plaintiffs' harms depended on independent funding agencies who were not parties to the lawsuit. *Id.* at 569–70, 112 S.Ct. 2130. Because the trial court had no authority over the other agencies, the redressability of plaintiffs' harms was merely speculative. *Id.* at 571, 112 S.Ct. 2130. In *ASARCO Inc. v. Kadish*, the Supreme Court was asked to determine whether a case was nonjusticable under federal standards because the original plaintiffs lacked standing to sue. 490 U.S. 605, 612, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989). Although the Supreme Court ultimately decided the question based on the fact that the state court might apply state law rules instead of Article III limitations, the Court initially examined whether plaintiffs had established standing under Rule 23. The Supreme Court concluded that plaintiffs had not because their claims were not legally redressable. In so reasoning, the Supreme Court noted that: "[w]hether the association's claims of economic injury would be redressed by a favorable decision in this case depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." 490 U.S. at 615, 109 S.Ct. 2037.

Similar to *Lujan* and *Kadish*, plaintiffs here ask the Court to grant equitable relief which may or may not influence the decision of independent third parties. Simply put, the Court cannot predict the behavior of Total or the other members of the joint venture much less foreign companies who might invest as well. It would be simply conjecture to conclude that no other domestic or foreign company would be willing to take over Unocal's share of the operating expenses.[6]

For purposes of class certification, plaintiffs' allegations and supporting evidence do not demonstrate that injunctive relief against Unocal is likely to redress their alleged injuries. Because Unocal's share does not make up a substantial part of the funding and construction of the pipeline is complete, any equitable relief enjoining Unocal's participation would not be likely to effect the operation of the pipeline or more critically, the elimination of human rights violations in furtherance of the project. Instead, the cessation of these alleged illegal acts would depend on the independent actions of companies and governmental entities who are not parties to this lawsuit. Ultimately, none of the specific equitable relief suggested by plaintiffs and none that the Court can envision would serve to redress plaintiffs' injuries.

## IV.

### *Conclusion*

Accordingly, the Court finds that plaintiffs lack standing for purposes of a(b)(2) class action because their harms cannot be legally redressed by injunctive relief. Plaintiffs' motion for class certification is consequently **DENIED**.

**IT IS SO ORDERED.**

---

6. Plaintiffs mainly focus their evidence on domestic corporations. However, there is no evidence that foreign companies would not be interested in buying Unocal's interest. Several of plaintiffs' articles show that while U.S. investors have pulled out of Burma, several foreign countries continue to invest in Burma and other countries bordering Burma.