Raeanna CURTIS, Plaintiff-Appellee,

v.

**CITY OF NEW HAVEN,**
**Defendant-Appellant.**

Donald DINKINS, Plaintiff-Appellee,

v.

**CITY OF NEW HAVEN,**
**Defendant-Appellant.**

No. 259, Docket 83–7467.

United States Court of Appeals,
Second Circuit.

Argued Nov. 2, 1983.

Decided Jan. 17, 1984.

John R. Williams, New Haven, Conn. (Williams & Wise, New Haven, Conn., of counsel), for plaintiffs-appellees.

Karen S. Nash, New Haven, Conn. (Office of the Corporation Counsel), for defendant-appellant.

Before FEINBERG, Chief Judge, FRIENDLY and PRATT, Circuit Judges.

FEINBERG, Chief Judge:

The City of New Haven appeals from an order of the United States District Court for the District of Connecticut, T.F. Gilroy Daly, Ch.J., enjoining the City and the members of its police department from using mace against any individual or group except under certain specified conditions. The City claims that under *Los Angeles v. Lyons,* —— U.S. ——, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), plaintiffs Raeanna Curtis and Donald Dinkins have no standing to seek injunctive relief. For reasons stated below, we agree that *Lyons* requires us to so hold. Accordingly, we reverse the judgment of the district court.

I.

In 1978, plaintiffs brought separate suits in the district court against the City and named police officers, seeking damages and injunctive relief for violations of their civil

rights and for negligence in the use of mace. Each complaint joined constitutional claims under 42 U.S.C. §§ 1983, 1988 with state law claims; each alleged that the particular plaintiff was assaulted by a named officer or officers, who sprayed mace into plaintiff's face and eyes, and was denied proper treatment after the assault. Each plaintiff also alleged that defendants knew or should have known that mace "is a highly toxic poison capable of causing serious and permanent injury to a human being's skin and eyes, and that the active ingredient in MACE [chloroacetophenone] is believed to be carcinogenic and capable of causing genetic damage." Plaintiffs further alleged, among other things, that the City freely distributed mace to its police officers and encouraged use of the weapon, without providing adequate safeguards and training.

At the City's request, separate trials in each case were held in late 1982 on the damages and injunction claims. A jury returned a verdict of $5,000 for Curtis, finding that while an officer did not unlawfully arrest her or use excessive force against her, he negligently failed to provide her with appropriate first aid after spraying her with mace. A separate jury returned a verdict of $12,000 for Dinkins, finding that two officers unlawfully arrested and used excessive force against him, including the use of mace.

Following the verdicts on the damages claims, the court consolidated the cases for trial on plaintiffs' requests for an injunc-tion against the City regarding the use of mace. The City moved to dismiss the claims for injunctive relief on the ground that plaintiffs did not have standing under *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). See also *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). The district court denied the motion, distinguishing those cases on the ground that they involved a "structural injunction", rather than a "preventive injunction" of the sort approved in *Lyons v. Los Angeles,* 615 F.2d 1243 (9th Cir.1980), upon which the district judge relied heavily.

After a trial on the injunction issue in April 1983, the judge enjoined the City and its police officers from using mace except in those circumstances and under those conditions set forth in the International Association of Chiefs of Police (IACP) guidelines. The court found that mace is a "dangerous chemical agent capable of causing serious and long-lasting injury if basic precautions in its use and aftercare are not followed...." After concluding that the IACP guidelines constitute the minimum necessary precautions required for the safe and effective use of mace, the court found that the official policy of the City police on the use of mace, embodied in two Police Department General Orders, was deficient in significant respects.[1] The court noted that though the police department's training program incorporates the IACP guidelines, the training officer's lesson plan gave trainees a "mixed message" on when to use mace and, in any event, the official policy of the police department was set forth in

---

1. The district court gave the following examples of differences between the IACP guidelines and the New Haven Police Department's policy reflected in General Orders Nos. 21 and 26:

    [W]hile the IACP guidelines stress that mace is to be used only when absolutely required *to control violent behavior,* General Orders No. 21 and 26 do not specify that its use is to be so limited. The IACP Guidelines state that mace should only be used at a distance of three to eighteen feet from the subject, while the General Orders 21 and 26 do not set forth any distance requirements. As previously noted, one factor which contributes to severe or long-lasting injury from mace is the proximity of the subject to the spray. General Orders No. 21 and 26 do not establish any prohibition on the use of mace in confined spaces, in the vicinity of infants, or against persons not possessed of their normal protective reflexes as the IACP guidelines do. Nor do the New Haven Police Department's General Orders establish any limit on the duration of an application of mace to a human subject. Nor do the General Orders specify that copious flushing with water of the affected areas is required or that medical care be obtained in cases of severe or prolonged effects. Only the most glaring deficiencies of the New Haven Police Department's General Orders regarding the use of mace have been mentioned. (emphasis in original).

the deficient General Orders. The court refused plaintiffs' request that the use of mace be prohibited entirely until satisfactory training programs were established by the police department, but the court did enjoin the police from using mace except in conformity with the IACP guidelines. The court further held that permitting the use of mace in circumstances and conditions not in accordance with the IACP guidelines would violate plaintiffs' rights to due process and to be free from excessive force.

Six days after the court issued its decision granting injunctive relief, the Supreme Court decided *Los Angeles v. Lyons,* —— U.S. ——, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). The City promptly moved for amendment of the district judge's decision and for withdrawal of· the injunction in light of *Lyons.* The judge denied the motion, distinguishing *Lyons* from this case on grounds discussed below. The City then took this appeal on the issue of plaintiffs' standing to seek injunctive relief.

## II.

In their briefs and oral argument in this court, the parties, of course, focus on the significance of *Los Angeles v. Lyons,* supra. In that case, the plaintiff sought damages and injunctive and declaratory relief, alleging that Los Angeles police officers had stopped him for a traffic code violation and, without provocation or justification, had seized him and "applied a 'chokehold' [a procedure through which pressure is applied to the carotid artery] rendering him unconscious and causing damage to his larynx." *Lyons,* supra, 103 S.Ct. at 1663 (footnote omitted). The plaintiff sought to prohibit the Los Angeles police from using ·"control holds" "except in situations where the proposed victim ... reasonably appears to be threatening immediate use of deadly force." Id. The district court granted Los Angeles's motion for partial judgment on the pleadings, including the count requesting injunctive relief. The Ninth Circuit reversed, holding that *Lyons* had standing to seek a "preventive" injunction. 615 F.2d 1243, 1249 (1980), and the Supreme Court

denied certiorari, 449 U.S. 934, 101 S.Ct. 333, 66 L.Ed.2d 158 (1980), with Justices White, Powell and Rehnquist dissenting. On remand, the district judge enjoined use of chokeholds unless the application of such force was necessary to prevent serious bodily harm to a police officer, and the Ninth Circuit affirmed, 656 F.2d 417 (1981) (per curiam).

The Supreme Court reversed, over a strong dissent by four Justices, holding that "[a]bsent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." 103 S.Ct. at 1670 (citations omitted). The Court stated that in order to establish an actual controversy, Lyons would have had to allege that he would have another encounter with the police, and make the "incredible assertion" either that *all* Los Angeles police officers *always* choke citizens with whom they have an encounter or that the city ordered or authorized its police officers to act in that manner. Id. at 1667. The Court stated that *O'Shea v. Littleton,* supra, and *Rizzo v. Goode,* supra, could not be distinguished on the ground that these cases sought "massive structural" relief, while Lyons sought only a limited injunction to prevent an illegal police practice. Rather, the critical standing inquiry is whether a plaintiff is "realistically threatened by a repetition of his experience. . ." or whether the claim is "speculative." The Court also dismissed Lyons's argument that his claim was capable of repetition yet evades review since the "claim that he was illegally strangled" would still be litigated in the suit for damages and since there was no demonstration that Lyons would again be subjected to ·the alleged illegality. 103 S.Ct. at 1669, citing *DeFunis v. Odegaard,* 416 U.S. 312, 319, 94 S.Ct. 1704, 1707, 40 L.Ed.2d 164 (1974) (per curiam). Finally, the Court emphasized considerations of comity and federalism in cautioning federal courts to exercise restraint before interfer-

ing with the administration of law enforcement by the states.

The holding in *Lyons* and the considerations underlying it are directly applicable to the case before us. Plaintiffs do not make, in the words of the Court, the "incredible assertion" that *all* City police officers *always* assault people they encounter with mace, or that the City authorizes its police officers to act in such a manner. The City's General Orders, as stated by the district court, require that:

> MACE is to be used like any other defensive weapon, as a last resort. MACE should be aimed at the chest, not the eyes. MACE should be used only for taking a person into custody. Under normal circumstances, it is not a coercive or crowd-control weapon. Areas of the body exposed to MACE should be flushed with water as soon after exposure as possible. Salves, creams, or ointments should not be applied to skin affected by MACE until the chemical has dissipated.

The City's General Orders do not order or authorize police officers to act the way the juries found that they did here. In fact, by using mace coercively as an offensive weapon and by not providing treatment immediately after spraying plaintiffs with mace, the police officers appear to have violated the General Orders, as the damage award for each plaintiff seems to indicate. It is true that plaintiffs here have actually suffered past injury. However, this was also true in *Lyons,* as the dissent in that case pointed out, 103 S.Ct. 1676–77, but was not enough to confer standing for injunctive relief.

Moreover, plaintiffs have not alleged that it is likely that they will be stopped by City police in the future and, for no reason and without provocation, assaulted with mace and not given treatment afterward. As the City points out, there is no evidence that this has happened since plaintiffs were assaulted in 1977. Compare with *Kolender v. Lawson,* — U.S. —, 103 S.Ct. 1855, 1861 n. 1, 75 L.Ed.2d 903 (1983) (Brennan, J., concurring). Under the stringent standards of *Lyons,* this is not a case capable of repetition yet evading review, as there is no showing that the behavior complained of will likely be repeated as to these plaintiffs and, in any event, the legality of the actions of the police was reviewed in the damages action.

In denying the City's motion to have the injunction withdrawn because of *Lyons,* the district judge sought to distinguish that case on the ground that the Court's "holding was based, at least in large measure, on the absence of any showing that the *policy* of the Los Angeles police department was deficient or that it authorized the use of chokeholds in circumstances that would amount to constitutional deprivations." (Emphasis in original). The district judge reasoned that since he had held that the official policy of the New Haven police department was deficient, plaintiffs had standing to seek injunctive relief. However, as noted above, the Court made clear in *Lyons* that the critical inquiry is the likelihood that these plaintiffs will again be illegally assaulted with mace. In addition, the Court's discussion of official policy in *Lyons* is directly applicable to this case: "Nothing in that policy, contained in a Police Department manual, suggests that the chokeholds [mace], or other kinds of force for that matter, are authorized absent some resistance or other provocation by the arrestee or other suspect." 103 S.Ct. at 1669 (footnote omitted). As noted above, the General Orders of the City's police department similarly do not authorize the use of mace in the manner it was used in this case.

Tacitly conceding the overwhelming impact of *Lyons* on the issue of standing, plaintiffs raise an argument before us never pressed in the district court. They claim that the purpose of injunctive relief here is to protect them not as prospective arrestees but as inhabitants of a community in which a hazardous substance is being randomly applied to innocent and uninvolved civilians. Plaintiffs contend that when mace is sprayed, it affects not only the target but also innocent third parties in the area and the police themselves. Accordingly, plaintiffs argue that this case is controlled not

by *Lyons* but by such cases as *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); and *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 152–53, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). Therefore, plaintiffs say, they should be accorded standing.

The argument is ingenious, but we do not believe that the impact of *Lyons* can. so easily be avoided. While a chokehold and mace obviously have different effects, *Lyons* is not fairly distinguishable from this case. Plaintiffs concede that, under their theory, any resident of New Haven could bring suit to enjoin the police department's use of mace. This would appear to be true whether or not the resident had been actually injured or was likely to be injured in the future. *Lyons,* however, dispels the notion that any resident can seek an injunction to prohibit police activity, 103 S.Ct. at 1670. Even under plaintiffs' theory, they would have the burden of showing that they, as distinguished from the general citizenry of New Haven, are likely to suffer injury from mace in the future as opposed to having a "mere interest" in the claim. See *Sierra Club,* supra, 405 U.S. at 739, 92 S.Ct. at 1368; *Mountain States Legal Foundation v. Denver,* 567 F.Supp. 476, 478 (D.Colo.1983). Also, the injunction at issue here would inject the federal courts into the internal policies of the New Haven police department, in a manner clearly contrary to the views of the majority in *Lyons.* 103 S.Ct. at 1670. Under *Lyons,* we are constrained to find that the district court erred in concluding that plaintiffs had standing to obtain injunctive relief.[2]

The judgment of the district court is reversed, with instructions to vacate the injunction and to dismiss the claim for injunctive relief.

---

2. In view of our disposition, it is unnecessary to deal with appellant's argument that plaintiff Curtis would not have standing to seek injunctive relief in any event, since the jury did not find that her constitutional rights were violated.