Jane DOES I THROUGH III, Plaintiff,

v.

DISTRICT OF COLUMBIA, Defendant.

Civ.A. No. 01–02398 (HHK).

United States District Court,
District of Columbia.

June 18, 2003.

Harvey S. Williams, Washington, DC, H. Aubrey Ford, III, Irvin V. Cantor, Cantor, Arkema, Richmond, VA, for plaintiffs.

Jacques Philippe Lerner, Robert C. Utiger, Office of Corporation Counsel, D.C., Washigton, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

KENNEDY, District Judge.

Plaintiffs Jane Doe I, Jane Doe II, and Jane Doe III,[1] are individuals with developmental disabilities who receive habilitation services from the District of Columbia. Plaintiffs, by their next friends, bring this action on their own behalf and on behalf of others similarly situated, against the District of Columbia ("District") pursuant to 42 U.S.C. § 1983, seeking declaratory, injunctive, and monetary relief.[2]

This matter comes before the court on plaintiffs' motion for class certification pursuant to Fed.R.Civ.P. 23(b)(2). Upon consideration of plaintiffs' motion, defendant's opposition thereto, and the record of this case, the

1. Plaintiffs are proceeding pseudonymously, per order of the court, Chief Judge Hogan, docketed, Nov. 15, 2001.

2. Plaintiffs initially filed suit against the Mental Retardation and Developmental Disabilities Administration, as well as the District. The Mental Retardation and Developmental Disabilities Administration was dismissed from this suit by prior court order, as they are *non sui juris*. *See Does I through III v. Dist. of Columbia*, 238 F.Supp.2d 212, 222 (D.D.C.2002).

court concludes that plaintiffs' motion must be denied.

## I. BACKGROUND INFORMATION

### A. Factual Background

Plaintiffs are individuals with mental retardation who have been institutionalized in District facilities since the 1960's. From the time of their institutionalization through 1978, plaintiffs resided in Forest Haven, a facility which, before its closure, served the developmentally disabled population of the District of Columbia. They now reside in community-based facilities.

Plaintiffs bring this action because they claim that in the course of providing habilitation[3] services to plaintiffs and others similarly situated, the District adopted a policy, first known as Policy H-18, then, between 1991 through July 1998, Policy H-6. Plaintiffs claim that under this policy, the Superintendent of Forest Haven, and later, administrators of the Mental Retardation and Developmental Disabilities Administration ("MRDDA"), would routinely authorize medical procedures to be performed on institutionalized individuals, although such officials were without legal authority to act for or make medical decisions on behalf of the institutionalized persons.[4] As a result of this policy, invasive, non-emergency procedures were reportedly performed on plaintiffs, without medical personnel ever consulting with, or receiving consent from, plaintiffs' families, guardians, or court-appointed advocates. This District policy was reportedly in existence for at least thirty years, and it allegedly resulted in thousands of illegally-authorized surgical procedures, including forced sterilizations, hysterectomies, and abortions.

Plaintiffs claim that the District's policy violates their substantive and procedural due process rights, secured by the Fifth and Fourteenth Amendments. Plaintiffs accordingly seek the following: (1) monetary relief; (2) "[i]njunctive relief barring the District of Columbia from any further utilization of Policy H-6 or any other policy that allows city officials to consent to elective surgical procedures for plaintiffs and their fellow Class members without due process of law;" and (3) declaratory relief, in the form of a declaration providing "that the policy of the District of Columbia which authorizes city officials to consent to elective surgical procedures for developmentally disabled individuals violates plaintiffs' and Class members' liberty interest to accept or refuse medical treatment and is therefore an unconstitutional infringement of the substantive and procedural due process rights of plaintiffs and their fellow Class members." Compl. at 10, ¶¶ 2–5.

In this case, plaintiffs move for partial class certification pursuant to Federal Rule of Civil Procedure 23(b)(2).[5] Plaintiffs seek to certify a class comprised of persons with mental retardation or other developmental disabilities who receive, or have received in the past, habilitation services from the District who have had consent given by District officials for any elective surgical procedure at any time since 1970. Compl. ¶ 22. Under plaintiffs' plan, the liability phase of the case would be certified pursuant to 23(b)(2) ("Stage I"), and the damages portion of the case would be addressed at a later date ("Stage II").

---

3.  " 'Habilitation' is the process by which a person with developmental disabilities is assisted in acquiring and maintaining skills to cope more effectively with the demands of his or her own person and of his or her environment, and to raise the level of his or her physical, mental and social capabilities." Compl. ¶ 6.

4.  Plaintiffs contend that this policy was so routine that "consent" forms were prepared by the District, with the name of the superintendent of Forest Haven preprinted on the forms. Compl. ¶ 8; Pls.' Ex. 1 (pre-printed consent form).

5.  Fed.R.Civ.P. 23(c)(4) permits the partial certification of a class. It provides, in pertinent part, that: "[w]hen appropriate (A) an action may be brought or maintained as a class action with respect to particular issues." *See Eubanks v. Billington,* 110 F.3d 87, 96 (D.C.Cir.1997); *cf. Taylor v. Dist. of Columbia Water & Sewer Authority,* 205 F.R.D. 43, 49–50 (D.D.C.2002) (noting, in dicta, that partial hybrid certification may be appropriate when a class requests injunctive relief along with a request for monetary damages).

## B. The Plaintiffs

Three plaintiffs seek to represent the class.

### 1. Jane Doe I

Plaintiff Jane Doe I is a forty-three-year-old woman who has received habilitation services from the District of Columbia since 1960. In 1984, she became pregnant with her second child, previously having given birth to a healthy boy without developmental disabilities. District officials tried to stop Jane Doe I from having the baby by requesting that she have an abortion, but Jane Doe I refused. Nevertheless, against Jane Doe I's wishes, District officials gave their consent for the abortion, which was subsequently performed. District officials neither consulted with Jane Doe I's legal representative, nor obtained substituted judgment from a court. *See* Compl. ¶¶ 12–15.

### 2. Jane Doe II

Plaintiff Jane Doe II was diagnosed in 1994 with exotropia, a condition where one eye deviates from the other. An elective surgical procedure was proposed. District officials gave their consent for the surgical procedure. Jane Doe II's mother and court-appointed advocate was not consulted, although she was active in Jane Doe II's care. Compl. ¶¶ 16–18; *see* Pls.' Ex. 5 (consent form signed in regard to Jane Doe II).

### 3. Jane Doe III

Plaintiff Jane Doe III became pregnant in 1978. According to plaintiffs, Jane Doe III decided to carry the pregnancy to term. Regrettably, however, District officials decided that she should have an abortion. District officials gave their consent for the procedure, without consulting with Jane Doe III's legal representative, and without obtaining substituted judgment from a court. Compl. ¶¶ 19–21.

## II. ANALYSIS

### A. Standards for Class Certification

As the party moving for class certification, plaintiffs bear the burden of establishing that the requirements for class certification, as set forth in Rule 23 of the Federal Rules of Civil Procedure, have been satisfied. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Plaintiffs must therefore show that they satisfy all four prerequisites of Fed.R.Civ.P. 23(a) and that the class falls within at least one of the three categories set forth in Rule 23(b). *Hartman v. Duffey*, 19 F.3d 1459, 1468 (D.C.Cir.1994); *In re Vitamins Antitrust Litigation*, 209 F.R.D. 251, 256 (D.D.C.2002); *Pigford v. Glickman*, 182 F.R.D. 341, 345 (D.D.C.1998).

In order to satisfy the 23(a) prerequisites, plaintiffs must demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. Proc. 23(a). In addition, in order to satisfy 23(b)(2), the provision relevant here, plaintiffs must show that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). A district court exercises broad discretion in deciding whether plaintiffs have carried their burden. *Hartman v. Duffey*, 19 F.3d 1459, 1471 (D.C.Cir.1994) (citing *Bermudez v. United States Dep't of Agric.*, 490 F.2d 718, 725 (D.C.Cir.1973)).

### B. Standing

Plaintiffs move for class certification pursuant to Federal Rule of Civil Procedure 23(b)(2). As such, the court must determine whether plaintiffs have standing to obtain the equitable relief they seek. Upon careful consideration, the court concludes that they do not.

While the District raises the issue of standing to obtain injunctive relief only in a

tangential manner[6] and plaintiffs (erroneously) contend that "Rule [23] and the case law are clear that [standing] arguments are inapplicable to the certification decision," Pls.' Reply at 2,[7] in fact, "standing and entitlement to equitable relief are threshold jurisdictional requirements" that must be satisfied prior to the certification of a class. *Stevens v. Harper*, 213 F.R.D. 358, 366 (E.D.Cal.2002) (citing *Prado–Steiman v. Bush*, 221 F.3d 1266, 1280 (11th Cir.2000) ("Any analysis of class certification must begin with the issue of standing.")); *see also Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 294 (5th Cir.2001) ("Standing is an inherent prerequisite to the class certification inquiry."); *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir.1987); *Doe v. Unocal Corp.*, 67 F.Supp.2d 1140, 1141 (C.D.Cal. 1999) ("Standing is a jurisdictional element that must be satisfied prior to class certification.").

Though the question of standing has been inadequately explored by the parties, because the question is jurisdictional in nature, the court must address it, nonetheless. *See Lewis v. Casey*, 518 U.S. 343, 349 n. 1, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *United States v. Hays*, 515 U.S. 737, 742, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995); *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230–231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990); *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir.1999) ("federal courts are required sua sponte to examine jurisdictional issues such as standing") (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986)).

In this case, there is no question that plaintiffs meet the typical "case or controversy" requirements of Article III. They have suffered an injury in fact fairly traceable to the District's conduct, redressable by appropriate relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Valley Forge Christian Coll. v. Ams. United for the Separation of Church and State Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). The standing inquiry does not end there, however. In this case, plaintiffs seek class certification pursuant to 23(b)(2). To represent a class under 23(b)(2), plaintiffs must have standing to obtain injunctive relief. *Cf. Wooden v. Bd. of Regents of Univ. Sys.*, 247 F.3d 1262, 1288 (11th Cir.2001). Plaintiffs' entitlement to such relief is the question now before this court.

### 1. Plaintiffs Lack Standing to Obtain Prospective Injunctive Relief

*City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), controls the matter at hand. In *Lyons*, the plaintiff sued the City of Los Angeles and several of its police officers, alleging that the officers applied a chokehold when they stopped him for a traffic violation, causing substantial injury. The plaintiff sought damages and an injunction barring chokeholds except where a suspect threatened to use deadly force.

The Supreme Court rejected the plaintiff's claim. The Court provided that, to invoke Article III jurisdiction, a plaintiff seeking injunctive relief must show that she is in immediate danger of sustaining some direct injury in the future. Relying upon *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), the Court stated that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy

**6.** The District states that plaintiffs lack standing but neither explains the basis for its conclusion nor cites authority to support it.

**7.** Plaintiffs further provide: "The question of standing, however, is not a proper objection to certification, in part because it involves consideration of the merits of the case." Pls.' Reply at 4. In support of this proposition, plaintiffs cite *In re Lorazepam & Clorazepate Antitrust Litigation*, 289 F.3d 98, 107 (D.C.Cir.2002). *Lorazepam* is inapposite, however, as it pertains to an appellate court's power to review a lower court decision concerning antitrust standing, pursuant to Fed. R.Civ.P. 23(f). In fact, in *Lorazepam*, the D.C. Circuit distinguished antitrust standing from constitutional standing, stating: "The question of constitutional standing, which is a prerequisite to Rule 23 class certification because it goes to the court's jurisdiction, is not at issue here." *Lorazepam*, 289 F.3d at 108. Thus, in *Lorazepam*, quite apart from what plaintiffs suggest, the D.C. Circuit explicitly reaffirmed that constitutional standing is a prerequisite to Rule 23 class certification.

regarding injunctive relief. ..." The *Lyons* Court found that while the plaintiff may have had standing to seek damages against the individual officers and even the City, he could not establish a real threat that an officer would choke him again. *Lyons*, 461 U.S. at 105–06, 103 S.Ct. 1660.

▪ *Lyons* thus establishes that, in order to assert claims for prospective injunctive relief, a plaintiff must demonstrate, not only that she has been harmed in the past, but "that [s]he is realistically threatened by a repetition of [the violation]." *Id.* at 109, 103 S.Ct. 1660. Put another way, "[i]n order to obtain ... an injunction, a plaintiff cannot simply allege that [s]he was previously subjected to the defendant's actions;" plaintiff must instead show that " 'there is a real and immediate threat of repeated injury.' " *Dist. of Columbia Common Cause v. Dist. of Columbia*, 858 F.2d 1, 8 (D.C.Cir.1988) (quoting *O'Shea*, 414 U.S. at 496, 94 S.Ct. 669). *See Wooden*, 247 F.3d at 1283 ("To have standing to obtain forward-looking relief, a plaintiff must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future."); *Malowney v. Fed. Collection Deposit Group*, 193 F.3d 1342, 1346 (11th Cir.1999); *Nelsen v. King County*, 895 F.2d 1248, 1249–50 (9th Cir.1990).[8] This requirement affects plaintiffs' class certification motion because "unless ... one of the named plaintiffs is in real and immediate danger of being personally injured ... the plaintiff class lacks standing" to pursue equitable relief. *Church v. City of Huntsville*, 30 F.3d 1332, 1340 (11th Cir.1994). This requirement spans to plaintiffs' claim for declaratory relief as well. *See Fair Employment Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28

F.3d 1268, 1273 (D.C.Cir.1994); *City of Houston v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1429 n. 6 (D.C.Cir.1994); *Haase v. Sessions*, 835 F.2d 902, 910–11 (D.C.Cir. 1987).

▪ The burden of showing that she "is realistically threatened by a repetition of [the violation]," rests, at all times, with the plaintiff. *Lyons*, 461 U.S. at 109, 103 S.Ct. 1660; *see San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir.1996) ("As the parties invoking federal jurisdiction, plaintiffs bear the burden of establishing their standing to sue .... [b]ecause plaintiffs seek declaratory and injunctive relief only, there is a further requirement that they show a very significant possibility of future harm"); *Nelsen*, 895 F.2d at 1251 ("The burden [of] showing likelihood of recurrence [is] firmly on the plaintiff") (quoting *Sample v. Johnson*, 771 F.2d 1335, 1342 (9th Cir.1985)); *Stevens*, 213 F.R.D. at 367 ("The burden of establishing standing as well as an entitlement to equitable relief lies squarely with the plaintiffs in this case.").

▪ Under this standard, in order to establish that they have standing, plaintiffs must demonstrate a real or immediate threat that, in the absence of injunctive relief, the District will consent to a surgical procedure to be performed on Jane Doe I, II, or III, without due process of law. The court finds that while certain factors, indeed, counsel in favor of finding that plaintiffs have standing to obtain injunctive relief,[9] three factors militate against such a finding, and in the court's view, these three factors are determinative. Accordingly, the court finds that plaintiffs have failed to establish a likelihood of future injury because: (1) plaintiffs' injuries did not

---

**8.** As the D.C. Circuit recognized in *Fair Employment Council of Greater Washington v. BMC Mktg. Corp.*, 28 F.3d 1268, 1274 (D.C.Cir.1994), the specific standard by which to judge plaintiffs' claim of future injury is somewhat unclear. *Compare Int'l Union of Bricklayers & Allied Craftsmen v. Meese*, 761 F.2d 798, 803 (D.C.Cir. 1985) (adopting "fairly probable" as standard), *with Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (indicating that plaintiff whose standing rests on threat of future injury must show that this injury is "certainly impending"); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 n. 2, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (same); *and Animal Le-*

*gal Def. Fund, Inc. v. Espy*, 23 F.3d 496, 500–01 (D.C.Cir.1994) (same). Because this court finds that plaintiffs lack standing under either standard, the court need not determine which standard need be utilized.

**9.** Especially persuasive is the fact that, for reasons beyond their control, plaintiffs reside in District facilities, and thus, have constant contact with District personnel. *See, e.g., 31 Foster Children v. Bush*, 329 F.3d 1255, 1265–67 (11th Cir. 2003); *Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir.1994).

occur pursuant to a policy that is currently in place, or that was in place at the time the instant action was filed; (2) plaintiffs' complaint does not establish facts or circumstances sufficient to establish standing; and (3) plaintiffs have not shown that *any* individual was subjected to illegal treatment in the past six years.

### a. Plaintiffs' Injuries Did Not Occur Pursuant to a Policy, Currently in Place or in Place at the Time the Action Was Filed.

Courts generally agree that, "when the threatened acts that will cause injury are authorized or part of a policy, it is significantly more likely that the injury will occur again," and it is consequently more likely that plaintiffs have standing to pursue equitable relief. *31 Foster Children v. Bush,* 329 F.3d 1255, 1265–66 (11th Cir.2003); *accord Armstrong v. Davis,* 275 F.3d 849, 861 (9th Cir.2001) (suggesting that a plaintiff can show that her injury is likely to recur if the defendant acted pursuant to a challenged statute or formal policy); *Gomez v. Vernon,* 255 F.3d 1118, 1127 (9th Cir.2001); *Deshawn E. by Charlotte E. v. Safir,* 156 F.3d 340, 344–45 (2d Cir.1998) (finding that the plaintiffs had standing to obtain equitable relief, in part, because the interrogation methods, subject to challenge were "officially endorsed policies"); *Church,* 30 F.3d at 1339, (providing that the likelihood of future injury is great where there is municipal policy that authorizes constitutional deprivations suffered by plaintiffs); *LaDuke v. Nelson,* 762 F.2d 1318, 1324 (9th Cir.1985).

▪ In this case, in plaintiffs' favor, the complaint states that the illegal conduct challenged herein occurred pursuant to a formal policy, established, implemented, and ratified by the MRDDA. Compl. ¶ 32. Plaintiffs' allegation that they were harmed pursuant to a policy is not necessarily determinative, however. As the D.C. Circuit has provided: "[M]ore than a nebulous assertion of the existence of a 'policy' is required to establish standing. The plaintiffs must not only demonstrate its existence but also that they are likely to be subjected to the policy again." *Haase,* 835 F.2d at 911. It is here where, for three reasons, plaintiffs fail.[10]

First, to the extent that plaintiffs seek injunctive relief to enjoin the utilization of Policy H–6, there has been no showing that plaintiffs "are likely to be subjected to the policy again," *id.,* because, quite simply, Policy H–6 no longer exists. Plaintiffs' complaint states:

> [T]he District of Columbia, through the MRDDA, adopted a patently illegal policy of authorizing non-emergency surgical procedures on developmentally disabled persons, without obtaining legal consent. This policy, presently known as Policy H–6, has existed for at least 30 years and has resulted in thousands of illegally authorized surgical procedures, including forced sterilizations, hysterectomies and abortions. The defendants continue to this day to authorize surgical procedures on individuals with developmental disabilities, without the consent of any legally authorized representative.

Compl. at 2.

Elsewhere, however, plaintiffs concede that Policy H–6 was abrogated in 1998 (approximately three years before the filing of the instant action).[11] Pls.' Reply at 12.

---

**10.** The court further notes that plaintiffs, throughout their papers, assert that they were harmed pursuant to Policy H–6. Only after the District noted that Policy H–6 ceased to exist in 1998, do plaintiffs contend that the District's subsequent policies also contain "obvious constitutional infirmities." Pls.' Reply at 14. Plaintiffs' apparent denial concerning the abrogation of Policy H–6 can be seen, in part, by their selective citation to deposition testimony. *See* Pls.' Reply, Ex. 4 at 104 (Dep. of Hubbard) ("A: And so this policy [Policy H–6] was put into effect and it continued to exist after Forest Haven was closed, as the policy governing the medical consent process. Q: Okay. It was still in effect in 1996? A: That's correct. Q: Is it still in effect today?"). At that point, however, the deposition testimony provided to the court skips pages 105—120, and so the question posed to Mr. Hubbard is left unanswered. Furthermore, the court notes that, while plaintiffs include a number of exhibits tending to show that MRDDA had a policy and practice concerning medical consent procedures from 1984 to 1998, plaintiffs include *no* evidence concerning District activities or policies, post–1998.

**11.** A policy, inadequately detailed by the parties, was in force in the District of Columbia from July 1998 through January 2003.

Plaintiffs further concede that a new policy now governs medical consent procedures in the District. *Id.; see* Def.'s Opp'n, Ex. 1 (Procedures for Securing Medical and Dental Care for MRDDA Consumers ("Procedures")); *see also* Citizens with Mental Retardation Substituted Consent for Health Care Congressional Review Temporary Amendment Act of 2002, D.C. Law 14–241 (Mar. 25, 2003) (amending D.C.Code § 7–1305.07).[12] Thus, to the extent plaintiffs argue that without injunctive relief they will again be subjected to Policy H–6, their claim must fail.[13]

Alternatively, in places, it appears that plaintiffs seek to challenge the District's new policy. *See* Pls.' Reply at 10 (noting that injunctive relief is required because the "replacement policy is quite as flawed as the original"); *id.* at 13 ("[T]he January 1, 2003 policy is still illegal, and should be enjoined."). In their challenge to the District's new policy, however, plaintiffs neither claim that they have been injured pursuant to that policy, nor that *anyone* has been injured thereunder. Thus, again, plaintiffs have not demonstrated " 'a real and immediate threat of ... injury,' " pursuant to the policy at hand. *Dist. of Columbia Common Cause*, 858 F.2d at 8 (quoting *O'Shea*, 414 U.S. at 496, 94 S.Ct. 669).

Thus, the court is left with the sense that plaintiffs are not really challenging a "policy" at all, and are instead challenging isolated decisions by District decision-makers. This sense is confirmed by plaintiffs' own statements, made in support of class certification. *See* Pls.' Reply at 11 ("[S]o long as MRDDA officials take it upon themselves to ignore written policy and make medical decisions for MRDDA customers, they are violating the

constitutional rights of those customers. That is what needs to be enjoined."); *id.* at 10–11 ("whatever the policy, the relevant question is how medical decisions are made in practice").

This argument, to the extent it encapsulates plaintiffs' view, militates against a finding of standing to obtain equitable relief. As set forth above, courts are far more likely to find that there is a legitimate threat of future injury when a plaintiff challenges a policy, rather than an individual's isolated action, since actions that occur pursuant to a policy are more likely to reoccur. *See, e.g., Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1287 (5th Cir.1992) (finding that the plaintiff lacked standing, in part, because she was challenging the actions of one decisionmaker, not an over-arching policy); *Curtis v. City of New Haven*, 726 F.2d 65, 68 (2d Cir.1984) (concluding that the plaintiffs lacked standing because they could not prove that they would be assaulted with mace in the future, absent any police department order authorizing the use of mace in the illegal manner challenged by the plaintiffs).

Accordingly, for the reasons set forth above, the court concludes that plaintiffs in this action are not challenging a policy that was in place when the complaint was filed and that this fact militates against standing.

**b. Plaintiffs' Complaint Does Not Establish Facts or Circumstances Sufficient to Establish Standing.**

The court next turns to plaintiffs' complaint to determine whether it sufficiently alleges that plaintiffs face a real or immediate threat that, in the absence of injunctive relief, the District will consent to a surgical procedure to be performed upon Jane Doe I, II, or III, without due process of law. Upon careful consideration, the court find that it

---

12. Under the Procedures: "Consumers deemed competent to make informed decisions, once informed, will be allowed to refuse examination/treatment." Def.'s Opp'n, Ex. 1 at 2. "In cases of emergency and non-emergency procedures, family members should be notified of the procedure and given an opportunity to grant consent." *Id.* at 9. The MRDDA Administrator is not legally permitted to provide consent for a medical procedure unless "a consumer is certified as an incapacitated individual and there [are] no family members or other person[s] available or willing to provide consent." *Id.* at 9. If the following criteria are satisfied, the Adminis-

trator may provide consent only in the manner prescribed by the Substituted Consent Act. *Id.* at 9. In addition, it worth noting that, although the Citizens with Mental Retardation Substituted Consent for Health Care Congressional Review Temporary Amendment Act of 2002 was promulgated quite recently, another almost-identical framework was put in place in 1998.

13. Plaintiffs do not assert that, in the absence of injunctive relief, the District would be inclined to reinstate Policy H–6.

does not. Neither plaintiffs' complaint, nor their subsequent filings, allege a risk of future injury, nor introduce evidence to adequately support such a claim.[14] These omissions further counsel against a finding that plaintiffs have standing to obtain injunctive relief. *See, e.g., Barwood, Inc. v. Dist. of Columbia,* 202 F.3d 290, 295 (D.C.Cir.2000) (finding that the plaintiffs lacked standing because their complaint did not allege a likelihood of future injury); *Fair Employment Council of Greater Washington v. BMC Mktg. Corp.,* 28 F.3d 1268, 1275 (D.C.Cir. 1994) (same); *Imagineering, Inc. v. Kiewit Pac. Co.,* 976 F.2d 1303, 1308–09 (9th Cir. 1992) (holding that plaintiffs "failed to allege sufficient facts to confer standing for purposes of injunctive relief" because plaintiffs' "complaint did not allege that the named plaintiffs would suffer the same purported injury in the future").[15]

### c. Plaintiffs Have Not Shown that Any Individual Was Subjected to Illegal Treatment in the Past Six Years

Finally, the court finds that significant time has elapsed since the events complaint of here occurred-and that this fact further militates against a finding that plaintiffs have standing to obtain the equitable relief they seek.

The most recent injury alleged in plaintiffs' complaint occurred in 1994, nine years ago, and seven years before the suit was filed, and the most recent injury of which the court may take judicial notice occurred more than six years ago, five years before the suit was filed.[16] Since plaintiffs have now gone nine years without incident, and the court knows of no individual harmed by the conduct at issue within the past six years, it is almost impossible to believe that, in the absence of injunctive relief, plaintiffs face " 'a real and immediate threat of repeated injury.' " *Dist. of Columbia Common Cause,* 858 F.2d at 8 (quoting *O'Shea,* 414 U.S. at 496, 94 S.Ct. 669); cf. *31 Foster Children,* 329 F.3d 1255, 1265–66 ("When a plaintiff cannot show that an injury is likely to occur immediately, the plaintiff does not have standing to seek prospective relief even if he has suffered a past injury."). *See, e.g., Curtis,* 726 F.2d at 68 (holding that plaintiffs lacked standing to

---

**14.** Interestingly, various allegations in plaintiffs' complaint are even written in the past tense, tending to demonstrate that the claims set forth therein do not span to the current day. *See, e.g.,* "At all times relevant hereto, it *was* the policy of D.C. and MRDDA, as established and implemented by the Administrator of MRDDA, and their predecessors, to improperly and unlawfully authorize medical and surgical procedures for developmentally disabled individuals by signing consent forms for the developmentally disabled individual. This policy and procedure *was* intentional and/or deliberately indifferent to the constitutional rights of plaintiffs and similarly situated developmentally disabled persons...." Compl. ¶ 32 (emphasis added). *See also* Compl. ¶¶ 33–41.

**15.** The closest plaintiffs come to alleging that they will suffer future injury at the hand of the District is in paragraph 41 of their complaint. The complaint states:

[P]laintiffs and the Class have suffered severe and substantial damages, including but not limited to, severe and permanent injuries; physical pain and mental anguish, past, present, and that which they may reasonably expect to suffer in the future; disfigurement, deformity, and associated humiliation and embarrassment; inconvenience, past, present, and that which they may reasonably expect to suffer in the future; and medical expenses,

past, present, and that which they may reasonably expect to suffer in the future.

Compl. ¶ 41. This allegation, especially as it relates to plaintiffs' mental anguish, humiliation, and embarrassment, is not relevant to the instant inquiry, however. As *Lyons* clearly establishes: "The emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant." *Lyons,* 461 U.S. at 107 n. 8, 103 S.Ct. 1660. Moreover, plaintiffs' other allegations are similarly insufficient because, while plaintiffs' more concrete medical expenses and permanent injuries may be the basis for money damages, they cannot be remedied by the injunctive relief plaintiffs pursue in this forum. *See Fair Employment Council of Greater Washington,* 28 F.3d at 1273 ("To pursue an injunction or a declaratory judgment, the ... plaintiffs must allege a likelihood of future *violations* of their rights by [the defendant], not simply future *effects* from past violations."). Plaintiffs' complaint therefore merely contends that the *effects* of the District's past conduct are likely to continue to plague plaintiffs well into the future, not that future violations are likely.

**16.** The court may take judicial notice of the facts set forth in Pls.' Mot. Ex. 9 (*Boyd v. Howard Univ.,* 97cv02567 (D.D.C. Dec. 23, 1999) (memorandum opinion) (Kennedy, J.)).

seek injunction against the use of mace by the city police department where the plaintiffs could not point to a person injured by the practice, in the past seven years); *Chavez v. Illinois State Police*, 1999 WL 592187, *16 (N.D.Ill. Aug. 2, 1999) (finding that the plaintiff lacked standing to obtain injunctive relief because, *inter alia*, six years had elapsed since any violation); *Neptune Fireworks Co. v. Ahern*, 1995 WL 311395, *15 (N.D.Ill. May 18, 1995) ("Plaintiff's alleged fear that an injury that occurred almost seven years ago could occur again, without any other showing, is not sufficient to support a prayer for injunctive relief."); *Washington v. Vogel*, 156 F.R.D. 676, 680 (M.D.Fla.1994) (passage of four years since plaintiff's allegedly discriminatory traffic stop suggested "diminished likelihood" that she would be wrongfully stopped in the future).

### III. CONCLUSION

In conclusion, while there are certain factors militating in favor of finding that plaintiffs have standing to pursue injunctive relief, three facts are inescapable, and, in the court's view, determinative. The court finds that because: (1) plaintiffs have not shown that they were injured pursuant to a policy, in place when the suit was filed; (2) plaintiffs' complaint neither alleges a risk of future injury, nor introduces evidence to adequately support such a claim; and (3) significant time has elapsed since plaintiffs suffered the injuries that form the basis for the instant action, plaintiffs have failed to demonstrate a "real and immediate threat" that, in the absence of injunctive relief, plaintiffs will again be harmed by the District's practices. *O'Shea*, 414 U.S. at 496, 94 S.Ct. 669.

Plaintiffs bore the burden of showing they are "realistically threatened by a repetition of [the violation]." *Lyons*, 461 U.S. at 109, 103 S.Ct. 1660. Plaintiffs have not satisfied that burden here. The court finds that it is nothing but sheer speculation that plaintiffs will, at some later date, be subjected to a medical procedure, consented to in an illegal manner by the District of Columbia. *See generally, Palmer v. City of Chicago*, 755 F.2d 560, 572 (7th Cir.1985). The court must

therefore conclude that plaintiffs lack standing to obtain the injunctive relief they seek. Because plaintiffs do not have standing to assert their claims for injunctive relief, their motion for partial class certification pursuant to Fed.R.Civ.P. 23(b)(2) must be denied. *See Schroedel v. New York Univ. Med. Ctr.*, 885 F.Supp. 594, 599 (S.D.N.Y.1995) (denying class certification because the plaintiff lacked standing to obtain injunctive relief).

Accordingly, for the reasons set forth above, it is this 18th day of June, 2003, hereby **ORDERED** that plaintiffs' motion for class certification is hereby **DENIED**.